PER CURIAM.
¶1 These consolidated appeals present two issues following our remand in Webster v. Krizan , No. 2016AP25, unpublished slip op. (WI App Mar. 28, 2017) (hereinafter, Krizan I ). In that decision, we held that Chad and Brenda Webster's offer to purchase certain of Daniel, Beverly, Scott and Dale Krizan's farm property held priority over a subsequent offer to purchase the same property by Travis and Ronald Krizan.[1] Id. , ¶8. In so holding, we rejected the Intervening Krizans' unjust enrichment argument, noting the circuit court's order required both that the closing on the Websters' offer "proceed with dispatch" and that $ 430,000 the Intervening Krizans paid in connection with their secondary offer was to be returned to them out of the net proceeds from the Webster closing. Id. , ¶9.
¶2 Following our decision, the Intervening Krizans filed a motion in the circuit court seeking statutory interest on the $ 430,000 from the date of payment. On appeal, the Intervening Krizans argue the circuit court erred by denying that motion, essentially asserting it was unfair for the Owner Krizans to have the interest-free use of their money for several years. We conclude the circuit court properly exercised its discretion by denying the Intervening Krizans' motion. Because the Intervening Krizans have maintained throughout this litigation that their offer should be enforced-including in their various complaints, in their appellate arguments in Krizan I , and in their post-Krizan I filings-we agree with the circuit court that their entitlement to the repayment of the $ 430,000 was never sufficiently certain to warrant an award of statutory interest. We therefore affirm the order declining to award statutory interest.
¶3 The circuit court also granted a motion for sanctions against the Intervening Krizans' attorney, J. Drew Ryberg ("Ryberg"). For a variety of reasons, Ryberg contends the court erred by sanctioning him. We agree with the circuit court that Ryberg's post-Krizan I motion seeking to bar the closing on the Websters' offer was frivolous as it merely sought to relitigate issues already decided by this court. We affirm the order for sanctions-an award of attorney fees to the Websters for their costs incurred in defending against the motion-but we decline the Websters' request to impose additional sanctions against Ryberg for filing a frivolous appeal.
BACKGROUND
¶4 Krizan I related to two offers to purchase the same farm property. The Websters made an offer to purchase in May 2013. Id. , ¶2. The Intervening Krizans made an offer to purchase in March 2014. Id. The Intervening Krizans' offer was accompanied by a $ 430,000 down payment, with the remaining balance due at closing.[2] However, the Intervening Krizans were unable to close the transaction when the title company discovered a lis pendens related to an action the Websters had filed in which they sought specific performance of their offer to purchase.
¶5 The Intervening Krizans intervened in the Websters' action and sought enforcement of their purchase offer. Id. Eventually, the Intervening Krizans filed a third amended intervention complaint advancing claims for fraud, misrepresentation, and equitable mortgage, as well as restating allegations that the Websters' offer failed to satisfy the formal requisites of WIS. STAT. § 706.02 (2015-16).[3] The circuit court granted the Websters' summary judgment motion, which was supported by the Owner Krizans, and denied a cross-motion for summary judgment by the Intervening Krizans. Id. , ¶¶3-4. The court reasoned that the Websters' offer controlled because it was first in time and because the Owner Krizans had affirmed the Websters' offer in their pleadings. Id. , ¶4.
¶6 The Intervening Krizans appealed, and we affirmed the grant of summary judgment in an opinion dated March 28, 2017.[4] Id. , ¶1. We concluded the Intervening Krizans had no standing to invoke the protections of WIS. STAT. § 706.02 because they were not parties or privies to the Webster offer. Id. , ¶6. Furthermore, we stated the Intervening Krizans lacked standing to assert the Websters' offer was otherwise void or unenforceable. Id. , ¶6 n.4. We also concluded the circuit court had properly declined to equitably enforce the Intervening Krizans' offer to purchase. Id. , ¶¶7-8. We similarly rejected the Intervening Krizans' assertion that the Owner Krizans had been unjustly enriched by the $ 430,000 payment, observing that the circuit court had required repayment of that amount out of the proceeds from the closing on the Websters' offer. Id. , ¶9. Accordingly, we affirmed the circuit court's grant of summary judgment in favor of the Websters. Id. , ¶8.
¶7 The Intervening Krizans did not file a motion for reconsideration in this court, nor did they petition the Wisconsin Supreme Court for review. Instead, on April 24, 2017-which was still within the thirty days for the Intervening Krizans to file a petition for review-they, through attorney Ryberg, filed in the circuit court a motion denominated a "MOTION TO BAR WEBSTER CLOSING." The motion contended that the circuit court should enforce the Intervening Krizans' offer instead of the Websters' offer. As legal grounds, the motion asserted equitable relief was, in fact, available because, contrary to this court's decision in Krizan I , the circuit court had not previously considered the availability of relief under WIS. STAT. § 706.04. The Intervening Krizans also argued that our legal reasoning in Krizan I permitted them to again assert that the Websters' offer was "second in time" to their offer. After filing the motion to bar, the Intervening Krizans filed a lis pendens against the property and submitted a brief supporting the motion in which they again advanced the priority issue and asserted their entitlement to equitable relief.
¶8 In response, the Owner Krizans and the Websters asserted that the law of the case doctrine applied to bar the Intervening Krizans from relitigating the issue of whether the Websters' offer was enforceable. Both the Owner Krizans and the Websters moved for sanctions under WIS. STAT. § 802.05 against Ryberg and the Intervening Krizans for frivolous filings. The Websters served the Intervening Krizans with their motion for sanctions on April 25, 2017, later filing their motion on June 1, 2017.
¶9 After receiving notice of the motions for sanctions, the Intervening Krizans released the lis pendens, but they did not withdraw their motion to bar the closing on the Websters' offer. Instead, they filed a supplemental brief on that motion, for the first time asserting the Websters' offer was unenforceable due to a lack of access to the subject property. They also argued, again for the first time, that the Websters had waived their right to close by not doing so within thirty days, as ordered by the circuit court during Krizan I 's pendency. For these and other reasons, the Intervening Krizans again argued their offer should be enforced over the Websters' offer.[5] Alternatively, the Intervening Krizans filed a motion requesting WIS. STAT. § 138.04 interest dating to 2014 on their $ 430,000 payment in the event the circuit court enforced the Websters' offer.
¶10 The Owner Krizans opposed the Intervening Krizans' request for interest, arguing that by pursuing an appeal and filing the motion to bar the Websters' closing, the Intervening Krizans were responsible for the delay in the repayment of their $ 430,000. The Intervening Krizans countered that their motion to bar the Websters' closing was based on new facts-namely, that this court's appellate opinion had in some way "put flesh on the bones" of the circuit court's "contract affirmance" theory, and that this additional legal reasoning rendered the priority of the Websters' offer susceptible to new attack.[6]
¶11 The circuit court addressed all pending motions in a written correspondence dated July 14, 2017, after which the court entered a written order incorporating the reasoning articulated in its letter. The court first denied the Intervening Krizans' motion to bar the closing on the Websters' offer. It concluded that its earlier ruling was a final, appealable judgment that resolved all issues concerning which offer was valid and enforceable. That ruling was affirmed in Krizan I . The court therefore concluded that absent a WIS. STAT. § 806.07 motion for relief from judgment (which the Intervening Krizans had not filed), there was "absolutely no basis" upon which the court would be permitted to re-examine that issue in light of this court's opinion in Krizan I .
¶12 Having concluded there was no legal basis to award the Intervening Krizans' relief, the circuit court also concluded the motion to bar the closing was frivolous under WIS. STAT. § 802.05(2)(b). Accordingly, the court granted the Websters' motion for sanctions and required their attorney to submit an itemization of attorney fees incurred in defending the motion.[7] However, the court denied the Owner Krizans' motion for sanctions, apparently concluding they had filed their motion too quickly and had not provided the twenty-one-day "safe harbor" period required by statute.[8] See WIS. STAT. § 802.05(3)(a)1.
¶13 Finally, the circuit court denied the Intervening Krizans' motion for statutory interest. It concluded that, regardless of whether some of the delay in closing on the Websters' offer had been attributable to the subsequent appeal, it was undisputed that since April 24, 2017, the closing could not occur due to the Intervening Krizans' motion to bar. As a result, the court concluded the $ 430,000 could not be considered a liquidated claim on which interest was owed, because if the Intervening Krizans prevailed on their motion to bar the amount would not be payable.
¶14 The Intervening Krizans filed a motion for reconsideration on the issue of sanctions and the denial of interest. Ryberg asserted sanctions against him were not warranted because the Intervening Krizans' waiver argument was meritorious. Ryberg also asserted he had "clumsily" worded the caption of the motion to bar, and that it was in fact a WIS. STAT. § 806.07 motion for relief from the judgment. For the first time, Ryberg asserted on the Intervening Krizans' behalf that relief from the judgment was warranted under § 806.07(1)(h), for reasons "in the interest of justice"-apparently that the Websters had not yet closed on their offer. Similarly, the Intervening Krizans asserted they were entitled to statutory interest because the Websters' closing had not occurred expeditiously.
¶15 After further motion practice related to the reasonableness of the Websters' proposed attorney fees, Ryberg notified the circuit court that the closing had occurred on the Websters' offer. Ryberg acknowledged his receipt of a check to his trust account in the amount of $ 430,000. Ryberg continued to assert that the waiver argument was meritorious and that his request for statutory interest on the Intervening Krizans' behalf for the use "of [their] money for substantially over three years" should be granted. The circuit court denied the Intervening Krizans' motion for reconsideration and awarded the Websters attorney fees as a sanction against Ryberg in the amount of $ 10,523.03.
¶16 The Intervening Krizans appeal from the orders, challenging the denial of their motion for statutory interest. Ryberg initiated a separate appeal, challenging the award of attorney fees to the Websters as a sanction for his frivolous filing. The appeals were subsequently consolidated for decision.[9]
DISCUSSION
I. Statutory Interest
¶17 We first address whether the circuit court erroneously denied the Intervening Krizans' motion for statutory interest on the $ 430,000 payment related to their offer to purchase. The allowance of interest is a matter within the circuit court's discretion. Estreen v. Bluhm , 79 Wis. 2d 142, 156, 255 N.W.2d 473 (1977). We will affirm a discretionary decision if the court examined the relevant facts, applied a proper standard of law, and used a rational process to arrive at a conclusion that a reasonable judge could reach. State v. Scott , 2018 WI 74, ¶39, 382 Wis. 2d 476, 914 N.W.2d 141.
¶18 The Intervening Krizans argue they were entitled to interest because the Owner Krizans had the use of their money between March 28, 2014, and August 28, 2017. Although the Intervening Krizans' arguments are somewhat unclear, their main assertion seems to be that it would be inequitable to allow the Owner Krizans to benefit from the interest-free use of their money during the time period before the closing on the Websters' offer occurred. The Intervening Krizans maintain there was "no cause not to pay it back" and "[t]he time value of money cannot be ignored."
¶19 It is true that "[i]nterest is required for the purpose of compensating one to whom payment is due for the lack of the use of the money." Estreen , 79 Wis. 2d at 156. However, the allowance of interest "depends upon the various equities in each case." Id. In essence, the circuit court determined the Intervening Krizans were not entitled to interest on the $ 430,000 because, at least as of the time they filed their motion for interest, the amount of any "claim" the Intervening Krizans had was uncertain. Based upon the facts of this case, and the circuit court's articulated rationale, we conclude the court properly exercised its discretion in denying the Intervening Krizans' motion for statutory interest.
¶20 As a general rule, interest begins to run on a liquidated claim at "the time payment was due by the terms of the contract and, if no such time is specified, then from the time a demand was made and, if no demand was made prior to the time of commencement of action, then from that time." Id. at 158-59. The offer to purchase apparently did not require interest to be paid on the $ 430,000, it does not appear the Krizans ever made a demand for repayment of that sum, and their claims were generally geared toward the enforcement of their offer to purchase over the Websters' offer. On appeal, the Intervening Krizans have not-and based on our review of the appellate record, have never-explained their rationale for requesting statutory interest from the date of the payment, and we will not abandon our neutrality to develop any such argument on their behalf.[10] See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.
¶21 The circuit court observed there was a factual dispute regarding whether the closing on the Websters' offer had been delayed in whole or in part because of the appeal in Krizan I . We agree with the court that any such factual dispute is irrelevant to the interest issue. Additionally, contrary to the Intervening Krizans' arguments on appeal, it is irrelevant whether the closing on the Websters' offer could have occurred prior to the time Krizan I was decided, and whether there were court orders regarding the closing that were not stayed pending the Krizan I appeal. The irrelevancy of these issues as to statutory interest arises as a result of the Intervening Krizans' attempts in Krizan I to either invalidate the Websters' offer or make it second in priority to their own. Had they prevailed, the Intervening Krizans' offer would have been enforceable and they would not have had their $ 430,000 payment refunded. Thus, by virtue of the Intervening Krizans' stance throughout this litigation, their entitlement to the repayment of the $ 430,000 was never sufficiently certain to warrant statutory interest until Krizan I was decided.
¶22 After Krizan I was decided, the Intervening Krizans moved within weeks-and before a petition for review to the Wisconsin Supreme Court was due-to bar any closing on the Websters' offer. The circuit court reasonably concluded that any delay in the repayment of the $ 430,000 after Krizan I was therefore attributable to the Intervening Krizans' continued assertions as to the priority of their offer, meritless as they were. See infra ¶¶26-29.
¶23 In sum, the manner in which the Intervening Krizans litigated this case rendered their entitlement to the $ 430,000 uncertain until after Krizan I , and even after that time they continued to dispute the enforceability of the Websters' offer, despite our decision to the contrary. Moreover, it was only after the Intervening Krizans filed post-Krizan I pleadings to continue disputing their entitlement to the property that they made a formal demand for interest. Under these circumstances, the circuit court did not erroneously exercise its discretion in denying the Intervening Krizans' request for statutory interest.
II. Sanctions
¶24 Ryberg also appeals the award of attorney fees to the Websters as a sanction for his frivolous motion practice. By signing, submitting, filing or advocating a document, an attorney is certifying to the court that the legal contentions stated therein are "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." WIS. STAT. § 802.05(2)(b). A claim is frivolous if the party or attorney knew or should have known that the claim was without any reasonable basis in law or equity. Howell v. Denomie , 2005 WI 81, ¶8, 282 Wis. 2d 130, 698 N.W.2d 621. If a court determines an action has been continued frivolously, the court may order a sanction sufficient to deter such future conduct, including requiring the violating attorney to pay "some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation." Sec. 802.05(3)(b).
¶25 We apply a two-step standard of review to determine whether an attorney has continued an action frivolously. First, what the attorney knew or should have known is a question of fact determined by the circuit court, and we will not overturn that finding unless it is clearly erroneous. See Keller v. Patterson , 2012 WI App 78, ¶22, 343 Wis. 2d 569, 819 N.W.2d 841. Second, whether the facts found by the circuit court support a finding of frivolousness is a question of law that we review de novo. Id. We resolve all doubts regarding frivolousness in favor of the party or attorney against whom sanctions are sought. Id.
¶26 The motion to bar the Websters' closing advanced three bases. First, the Intervening Krizans asserted their offer should be equitably enforced under WIS. STAT. § 706.04. Second, they asserted that this court was simply wrong to conclude the circuit court had considered and declined to award equitable relief under that statute. Third, the Intervening Krizans attempted to circumvent this court's decision on the priority issue, arguing that the legal reasoning contained in our opinion permitted them to make new priority arguments before the circuit court.
¶27 There was, in fact, no possible meritorious basis for any of these positions given our determinations-reached under a de novo standard of review-in Krizan I . The law of the case doctrine dictates that an appellate court decision on a legal issue must be followed in all subsequent proceedings in the circuit court or on later appeal. State v. Stuart , 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82. This court's decision in Krizan I established the law of the case as to issues of the Intervening Krizans' standing to challenge the validity of the Websters' offer, the availability of equitable relief under WIS. STAT. § 706.04, and the priority of the Websters' offer. Krizan I , No. 2016AP25, ¶¶6-9. The Intervening Krizans did not move this court for reconsideration, nor did they file a petition for review in the Wisconsin Supreme Court. The circuit court correctly concluded it lacked authority to grant relief on any of the arguments advanced by the Intervening Krizans in their motion, implicitly finding that a reasonable attorney in Ryberg's position would have known that such arguments lacked merit.
¶28 We separately address a fourth basis for the Intervening Krizans' motion to bar the closing, because it was made neither in the motion itself nor in the initial brief supporting that motion. Rather, on June 1, 2017, the Intervening Krizans filed a supplemental brief, arguing for the first time (and then in only two paragraphs) that the Websters had waived their right to close.[11] This brief was filed outside the twenty-one-day "safe harbor" following service of the Websters' motion for sanctions regarding frivolousness, which the Websters accomplished on April 25, 2017. See WIS. STAT. § 802.05(3)(a)1. Thus, Ryberg was already in violation of § 802.05 by the time the supplemental brief raising the waiver issue was filed. Ryberg cites no authority for the proposition that a party who submits a frivolous filing can subsequently "cure" the violation by raising new arguments outside of the safe harbor window, even assuming the new argument had merit.
¶29 In any event, there was no possible merit to the waiver argument, either. By making that argument, Ryberg was not merely seeking the return of his clients' $ 430,000 payment. Rather, by asserting the Websters had "waived" their right to close on the transaction, Ryberg was again asserting the primacy of the Intervening Krizans' offer to purchase. The priority issue had been conclusively determined by this court, even if there were other circuit court orders that had not been stayed that required the closing to occur while the appeal was pending. If the Intervening Krizans believed there had been a violation of a circuit court order, their remedy was to move to hold the violating parties in contempt. See WIS. STAT. ch. 785. Instead, Ryberg, on their behalf, attempted to manufacture what was essentially a forfeiture argument, seeking once again to have their offer enforced over the Websters' offer. Such argument was in clear contravention of our conclusion that the Intervening Krizans lacked standing to assert the Websters' offer was void or unenforceable. See Krizan I , No. 2016AP25, ¶6 n.4. Ryberg's conduct thus fell beyond the scope of zealous representation, and the circuit court properly determined it was sanctionable.
¶30 Ryberg makes several additional arguments on the sanctions issue, all of which we reject. First, he argues he should not be punished for his failure to present his motion as one for relief from judgment under WIS. STAT. § 806.07. However, it was Ryberg's legal arguments, not the title of his motion, that were frivolous. His post-sanction attempt to recast his motion as one for relief under § 806.07(1)(h) does nothing to absolve his prior sanctionable conduct.
¶31 Ryberg also raises a procedural objection to the award of sanctions, asserting that because the circuit court rejected the legal theory for the Websters' motion for sanctions, the court was proceeding on its own initiative.[12] When proceeding on its own initiative, a circuit court must enter an order describing the specific conduct that appears to violate WIS. STAT. § 802.05(2) and directing the allegedly violating party to show cause why it was not in violation. Sec. 802.05(3)(a)2. Ryberg complains that this procedure was not followed. However, the circuit court was under no obligation to follow the subparagraph (3)(a)2. procedure because the motion for sanctions was filed by a party under subparagraph (3)(a)1. That the court ultimately awarded sanctions on, at most, a slightly different theory of frivolousness than argued by the party advocating sanctions does not transform the motion into one made on the court's own initiative.
¶32 Finally, Ryberg briefly suggests the amount of the sanction was in excess of that necessary to deter future conduct. However, he fails to develop that argument in any meaningful fashion, and we decline to consider it. See Industrial Risk Insurers , 318 Wis. 2d 148, ¶25. As stated above, his conduct fell beyond the scope of zealous representation by improperly attempting to circumvent this court's decision in Krizan I . And contrary to Ryberg's assertions, the Websters were harmed by his conduct, both in needing to spend additional sums litigating against frivolous claims and in significantly delaying the sale of the property due to the Intervening Krizans' persistent, competing claim to the property.
¶33 The Websters seek further sanctions against Ryberg for prosecuting a frivolous appeal. See WIS. STAT. RULE 809.25(3). We decline to order further sanctions in this instance, and we trust that the circuit court's order will deter further frivolous filings.
By the Court. -Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Because most of the parties to this action bear the same surname, for the remainder of this opinion we will refer collectively to Travis and Ronald Krizan, who are present in this action as intervening parties, as the "Intervening Krizans." We will refer collectively to the Krizans who originally owned interests in the property at issue (Daniel, Beverly, Scott and Dale Krizan), as the "Owner Krizans." Chad and Brenda Webster will be referred to as the "Websters."

According to an affidavit from Travis Krizan, the Intervening Krizans' offer was meant to stave off foreclosure of the subject property, and the "down payment" was in fact a mortgage payoff made to the lender.

All references to the Wisconsin Statutes are to the 2015-16 version.

The circuit court's initial decision on the summary judgment motions was dated December 21, 2015. Additional proceedings were held after the notice of appeal in Webster v. Krizan , No. 2016AP25, unpublished slip op. (WI App Mar. 28, 2017) (hereinafter, Krizan I ) was filed, apparently related to a fourth amended complaint filed by the Intervening Krizans. On April 15, 2016, while Krizan I was pending, the circuit court ordered that the Websters' offer close within thirty days, consistent with its December 21, 2015 order.

The Intervening Krizans subsequently filed a reply brief urging the circuit court to reject the motions for sanctions and application of the law of the case doctrine. In both instances, the Intervening Krizans asserted there were new facts that warranted their motion practice.

The Intervening Krizans argued the circuit court's decision had "never defined how or when the affirmation occurred." They therefore apparently believed that-despite this court's decision under our de novo review of summary judgment in Krizan I -they had the opportunity to once again challenge in the circuit court the priority of the Websters' offer based on our reasoning, and specifically our conclusion that the Owner Krizans had affirmed the Websters' offer based on their pleadings. In the Intervening Krizans' view, they were entitled to have their offer enforced because it now predated the Owner Krizans' affirmance of the Websters' offer.

Because Wis. Stat. § 802.05(3)(b)1. prohibits an award of sanctions against a represented party for a violation of subsection (2)(b), the sanctions were ordered solely against Ryberg.

The Intervening Krizans' motion to bar was filed on April 24, 2017. The Owner Krizans' motion for sanctions was filed four days later, on April 28.

The circuit court case was administratively transferred to Judge Robert R. Russell following Judge Douglas T. Fox's retirement in 2017. Judge Fox issued the orders relevant to these appeals.

The Intervening Krizans were presumably free to bargain for the payment of interest on the $ 430,000 if their offer did not close, yet apparently they did not do so. Additionally, the Intervening Krizans do not explain when, if ever, they demanded repayment of the $ 430,000. It does not appear to have been prior to this court's decision in Krizan I , as throughout those proceedings-and most notably in that appeal-the primary thrust of the Intervening Krizans' arguments was that their offer should be enforced over the Websters' offer. Even the Intervening Krizans' assertions regarding unjust enrichment in Krizan I were geared toward the argument that their offer should be equitably enforced, in large part because of that very payment.
Also, the Intervening Krizans fail to explain why the Owner Krizans should be required to pay statutory interest when the funds were apparently paid to a third-party lender. Contrary to the Intervening Krizans' appellate arguments, it does not appear the Owner Krizans had "use of that money" in any meaningful sense. Although the Owner Krizans benefitted from that payment insofar as it prevented foreclosure, the Intervening Krizans also benefited as it kept alive their ability to purchase the property from the Owner Krizans.

Thus, contrary to Ryberg's appellate contention, his April 24, 2017 motion to bar was not "[l]argely ... premised on waiver." The issue of waiver was first raised more than one month after the motion was filed, and then only briefly mentioned.

The circuit court remarked it was finding the law of the case doctrine inapplicable because "there are no subsequent proceedings to be had in this court between any of the parties implicating the validity of any of the offers in this case." Despite this comment, it appears the court was, in fact, applying the law of the case doctrine when it concluded that "the litigation concerning the validity of the competing offers to purchase" was over given this court's decision in Krizan I and the Intervening Krizans' failure of to pursue further appellate relief.